UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TANYA McLAIN WEEMS | CIVIL ACTION NO: 5:10-CV-1452 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JAMES DAVID HODNETT, ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Record Document 71] filed on behalf of Defendant Trooper L. K. Hartsfield under Federal Rule of Civil Procedure 56. For the reasons which follow, the Motion for Summary Judgment is GRANTED.

## BACKGROUND

Plaintiff Tanya Weems (hereafter referred to as "Plaintiff" or "Weems") began as a property and casualty service representative and producer agent for State Farm Insurance Company ("State Farm"). Weems later became licensed as a producer in 1996, and started working for Maynard, Clark and Teasley, Inc. ("MCT"), an insurance agency located in Shreveport, Louisiana in October 2003. During her employment at MCT, Weems worked as a licensed insurance producer, primarily handling automobile collision, liability and uninsured motorist coverage. James David Hodnett ("Hodnett") served as President, sole stockholder and owner of MCT throughout Weems' employment at the company.

In early January 2009, an outside investor approached Weems about establishing an insurance agency. Weems agreed to help, though she claims that she did not intend to leave her employment at MCT at that time. Hodnett found out about the venture shortly thereafter. On January 23, 2009, MCT terminated Weems employment.

Following Weems' termination from MCT, James Hodnett, President of MCT, filed

a complaint with the Louisiana Department of Insurance ("LDOI") on March 4, 2009, alleging that Weems had engaged in a number of illegal activities during her employment with MCT. Based on this information, LDOI investigator, Ryan Curtis, was assigned to investigate the allegations.

On August 14, 2009, the LDOI issued a Notice of Civil Fine and Revocation of Agent's License, fining Weems $9,674.00 and revoking her insurance license. The stated factual basis for the action was as follows:

> Beginning on or about November 11, 2008, for at least seven insurance policies that were either cancelled or pending cancellation, you caused seven separate payments to be made from MCT's bank account to insurance companies to have the policies reinstated or to prevent cancellation without collecting the corresponding premiums for the seven policies from the respective customers. The total amount you caused to be debited from MCT's bank account for the seven policies was $1,427.32.
>
> Also, on at least two different occasions, you caused MCT's bank account to be debited or drafted for payment to insurers of a customer's NSF fees and for the payment of a customer's overdraft fees all without collecting the corresponding fees from the customers. The amount of these payments totaled $382.28.
>
> Additionally, beginning on or about July 9, 2008, you wrote thirty different insurance policies for individuals from whom you did not collect their respective initial premium payments. Nonetheless, as payment for the policies, you caused MCT's bank account to be debited or drafted by insurers that issued the policies. The amount of these payments totaled $6,489.84.
>
> Further, for sixteen different insurance policies written by you during the course of your employment with MCT, you collected from customers only partial amounts of the required initial down payment for those policies. However, as payment for the policies, you caused MCT's bank account to be debited or drafted by the insurers that issued the policies the full amount of the required initial down payment. The difference between the total payments you caused MCT bank account to be debited or drafted by insurers and the amounts actually collected by you totaled $1,154.24.
>
> Further, you received commissions of approximately $1,324.00 on the policies for which you failed to collect the initial payments or for which you

collected only partial initial payments.[1]

Following the revocation, Weems filed a written demand for an administrative hearing to contest the regulatory actions taken by the LDOI. At the administrative hearing held on December 21, 2009, the Administrative Law Judge ("ALJ") lifted the immediate suspension of the license. The ALJ noted that the allegations against Weems involved MCT's loss of money, and there was no immediate risk of harm to the public. The ALJ further stated that a decision on the revocation and civil fine would follow within 30 days. On February 5, 2010, the ALJ found in favor of Weems regarding the collection of premiums. The Order stated that the evidence indicated a disagreement over internal business policy and practice, rather than fraud, misappropriation, theft, unfair or deceptive, or dishonest insurance practices. The decision further noted that MCT's record keeping and document production were not sufficient to support the revocation of Weems' insurance license. Accordingly, the civil fine and insurance license revocation were reversed.[2]

During the same time period as the ongoing administrative process, the LDOI referred the case to the Louisiana State Police ("LSP") to review possible criminal actions, including insurance fraud, committed by Weems during the course of her employment at MCT. In addition to the allegations of theft and misappropriation of MCT funds, Weems was also being investigated for "forged insurance documents, [and] falsified information on insurance documents..."[3]

---

[1] See Record Document 71, Exhibit Nos. 3 and 4.

[2] See Record Document 71, Exhibit No. 7.

[3] See Record Document 71, Exhibit No. 2.

Senior Trooper L. K. Hartsfield (hereafter referred to as "Defendant" or "Hartsfield") is an investigator in the criminal division of the LSP, assigned to work in the insurance fraud unit. Hartsfield was assigned to investigate a case following a referral from the LDOI, through the insurance fraud task force. LDOI referred the case to LSP because of possible criminal behavior by Weems. Principals of MCT reported to the LDOI that Weems may have violated the law during the course of her employment with the company.

Following the hearing by the ALJ, LDOI investigator, Ryan Curtis, met with LSP Trooper Hartsfield to parse the issues being handled by the administrative process and the remaining factual allegations to determine what, if any, crimes were committed by Weems, and whether there was probable cause to believe that crimes had been committed.[4]

Hartsfield reviewed LDOI documentation of Weems' actions following the establishment of her own insurance agency. The investigation discovered the following serious violations:

(1) Unlicensed agent – On June 15, 2009, undercover LDOI investigators discovered an unlicensed agent writing policies at the Weems agency, and issuing insurance policies through USAgencies by entering false information onto the application without verification.

(2) Angela Strong – On June 15, 2009, Weems accepted payment of $464.00 from Angela Strong for issuance of a new policy of insurance, but did not tender payment on Strong's behalf to the insurer.

(3) Joy Abraham – On June 26, 2009, Joy Abraham paid $603.00 to Weems

---

[4]At the time of this meeting, a written decision had not been rendered by the ALJ.

for the renewal of a policy with Kemper Insurance, previously issued through MCT. Weems instead had USAgencies issue a new policy to Abraham without her consent for less money, keeping the premium difference herself.

(4) Aretha Hughes – On August 7, 2009, Aretha Hughes gave Weems $289.96 to initiate a new auto insurance policy. Weems issued Hughes an insurance identification card, but the insurer never received payment of the premium.

(5) Brian Jackson[5] – On August 11, 2009, Brian Jackson gave Weems $70.12 to initiate new auto coverage. Weems issued proof of insurance cards to Jackson. The insurer, USAgencies, never received payment nor issued a policy.

(6) Catherine Coffelt – On November 6, 2009, Coffelt learned that Weems had placed her name on another person's proof of insurance card, taking a payment of $130.00 and never secured the auto insurance;

(7) Alberta Brooks – On February 1, 2010, Weems called Brooks to obtain $158.89 for an increased premium on her insurance policy, which was sent to her. When Brooks went to Weems' former agency to sign paperwork, she learned that there had been no increase in premiums at all.

The facts of these incidents were not reviewed during the administrative court proceeding. Trooper Hartsfield prepared an affidavit for an arrest warrant and submitted

---

[5] Weems eventually made a plea bargain where she pled guilty to the charges related to Brian Jackson in exchange for a sentence recommendation and dismissal of the other counts.

it for review by Sgt. Michael Wilkerson on March 18, 2010,who approved the affidavit, then forwarded it to the Caddo Parish District Attorney's Office. The District Attorney's office requested some additions to the warrant via an email sent on March 26, 2010. The arrest warrant was submitted to, and signed by, the Honorable Ramona Emanuel, District Judge, First Judicial District Court, Caddo Parish, Louisiana on March 29, 2010. Later that day, Trooper Hartsfield contacted Weems' attorney, Fred Sutherland, to arrange a voluntary surrender. Weems voluntarily surrendered at the Caddo Correctional Center on March 31, 2010. There was some confusion about Weems' bond, so Sutherland contacted Hartsfield. Hartsfield told Sutherland that issues with the bond were handled by the District Attorney and the Court.

A few months later, the District Attorney decided not to pursue charges, but later reconsidered that decision and referred the matter to the Louisiana Attorney General to consider prosecution.

Weems filed a civil lawsuit in state court on August 13, 2010 claiming that Trooper Hartsfield caused her "false arrest and imprisonment" on the basis of an affidavit with "virtually the same" counts as were considered by the ALJ. The suit was removed to federal court on September 20, 2010.

On April 24, 2012, Weems plead guity to the count related to the Brian Jackson matter in the First Judicial District Court, Caddo Parish, Louisiana. The plea by Weems was entered without admitting guilt, but due to Weems and her attorney believing there was sufficient evidence for the conviction. The following discussion occurred during her sworn plea:

THE COURT: All right. And, Mr. Sutherland, your client is entering a plea of guilty under

Alfred [sic] versus North Carolina,[6] correct?

      MR. SUTHERLAND: That is correct, yes, sir.

      THE COURT: And while she is not admitting guilt, there is concern by you, Mr. Sutherland, and your client, that evidence could be such that there could be a conviction and in her best interest she's entering this plea, correct?

      MR. SUTHERLAND: That is absolutely correct, Judge.

      THE COURT: All Right. Ms. Weems, all that's correct?

      DEFENDANT: Yes, sir.

The First Judicial District Court, Caddo Parish, Louisiana accepted the guilty plea, finding that there was sufficient evidence to find Weems guilty of the crime committed.

## LAW AND ANALYSIS

**A. Legal Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394

---

[6] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970).

[7] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**B. Claims Against Trooper L. K. Hartsfield**

*1. Qualified Immunity*

In the Motion for Summary Judgment, the Defendant claims that he is entitled to qualified immunity for any claim brought against him during the course of the investigation and state court proceedings in this matter. A court ruling upon the issue of qualified immunity must apply a two-step analysis. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The court must determine whether "the facts alleged show the officer's conduct violated a constitutional right." Id. Second, if a violation has been established, the court must additionally determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. Id. The Supreme Court has further stated that a court may assess the two part standard for qualified immunity in any order. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808 (2009).

Once a defendant has raised a qualified immunity defense, the Plaintiff bears the burden of demonstrating the violation of a clearly established right. To demonstrate that a right is "clearly established," although Plaintiffs need not show that the "very action in

8

question" was previously held unlawful, the right must be sufficiently clear so that a reasonable officer would understand that he is violating that right. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987). Louisiana applies qualified immunity principles to state constitutional law claims based on "[t]he same factors that compelled the United States to recognize a qualified good faith immunity for state officers under § 1983." Moresi v. Dep't of Wildlife and Fisheries, 567 So.2d 1081, 1093 (La. 1990); Roberts v. City of Shreveport, 397 F.3d 287, 296 (5th Cir. 2005). If, upon viewing the evidence in light most favorable to the non-movant, reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.

Here, Trooper Hartsfield raises a defense of qualified immunity. Therefore, under the precedent established in Anderson, Weems has the burden to show that Hartsfield should not be afforded qualified immunity for his actions as an LSP Senior Trooper.

a. Franks Claims[8]

Weems states that Trooper Hartsfield obtained the arrest warrant in violation of her constitutional rights. In order to rebut the Motion for Summary Judgment, Weems must demonstrate a genuine issue of material fact regarding whether the defendants knowingly provided false information to secure the warrant or gave false information in reckless disregard for the truth. Michalik v. Hermann, 422 F.3d 252, 259, n.5. (5th Cir. 2005). Negligence and innocent mistakes on behalf of the government agent are not sufficient to

---

[8]This is a short hand reference to Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In Franks, the Supreme Court held that the Fourth Amendment required that a hearing be held at the defendant's request when the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit for the search warrant, if the statement was necessary to the probable cause finding.

show a reckless disregard for the truth. United States v. Runyan, 290 F.3d 223, 234, n.6 (5th Cir. 2002). Further, "to constitute a constitutional violation sufficient to overcome the qualified immunity of an arresting officer, the material misstatements and omissions in the warrant affidavit must be of such character that no reasonable official would have submitted it to a magistrate. Furthermore, specific omitted facts must be clearly critical to a finding of probable cause." Morin v. Caire, 77 F.3d 116, 122 (5th Cir. 1996)(internal quotations and citiations omitted). When making a determination, the Court must consider the totality of the circumstances. Freeman v. County of Bexar, 210 F.3d 550 at 553 (5th Cir. 2000).

Here, Weems claims that Trooper Hartsfield's submitted an affidavit with "virtually" the same facts and counts that were considered by the ALJ, without informing the neutral magistrate of the ALJ hearing, forms the basis for a constitutional violation. Trooper Hartsfield contends that he drafted and submitted the affidavit in good faith, and made a reasonable attempt to remove the issues before the ALJ. His efforts included meeting with the LDOI investigators and reviewing the entire case file. Additionally, his affidavit included new evidence of potential illegal activity that was not included in the administrative hearing.

While Weems believes that any issue considered and rejected by the ALJ cannot be relitigated in a criminal context, that is not the case. Under Louisiana state law, a decision or order by an ALJ is not considered a valid and final judgment for purposes of res judicata, and is not given res judicata effect. Wooley v. State Farm Fire & Cas. Ins. Co., 893 So.2d 746, 771 (La. 2005). Therefore, Trooper Hartsfield was permitted to use the same information from the ALJ hearing in his affidavit. In this instance, the affidavit used new information as well. Even without the new information, however, Trooper Hartsfield was in good faith and reasonably believed that the issues submitted to the ALJ had been

culled based on his consultation with the LDOI investigator. Therefore, Trooper Hartsfield is entitled to qualified immunity.

*b. Favorable Termination Rule*

Even if qualified immunity was not applicable based on these facts, the Defendant would be entitled to Summary Judgment based on the Favorable Termination Rule established by the Supreme Court in Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) . Pursuant to Section 1983, Weems asserts claims for false arrest, malicious prosecution, civil conspiracy, and respondeat superior liability against all of the Defendants, including Trooper Hartsfield. Trooper Hartsfield argues that under Heck these claims must be dismissed because Weems pled guilty to one of the charges brought against her in exchange for the other charges being dismissed.

Under Heck, a person who is convicted of a crime cannot recover for damages related to an alleged violation of his constitutional rights if the alleged violation arose from the same facts and circumstances of the conviction, unless he proves "his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1995)(citation omitted). This requirement or limitation has become known as the "favorable termination rule." Sappington, 195 F.3d at 235.

Section 1983 claims that effectively attack the constitutionality of an underlying criminal conviction do not accrue until that conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. See Hudson v. Hughes, 98 F.3d 868, 872 (5th Cir.1996), citing Heck, 512 U.S. at 486–487, 114 S.Ct. at 2372. This legal principle serves to prevent Section 1983 plaintiffs from collaterally attacking convictions that are still outstanding. See Id., citing Heck, 512 U.S. at 486, 114 S.Ct. at 2371 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction ..., just as it has always applied to actions for malicious prosecution."). Based upon this rationale, "[t]he maturity of a [S]ection 1983 claim ... depends on 'whether a judgment in [the plaintiff's] favor ... would necessarily imply the invalidity of his conviction.'" Id., citing Heck, 512 U.S. at 487, 114 S.Ct. at 2372. Simply put, "the Heck determination depends on the nature of the offense and of the claim." Arnold v. Town of Slaughter, No. 03–30941, 2004 WL 1336637, –––2 (5th Cir. June 14, 2004).

Here, Weems pled guilty in state court to one of the charges brought against her in exchange for the other charges being dismissed. The criminal transcript shows that Weems and her attorney desired to make clear that she was not pleading guilty because she was guilty, but rather that they believed the evidence against her would result in a conviction, as permitted under Alford. This has no bearing on the current lawsuit because an Alford plea cannot be used to circumvent the favorable termination rule established in Heck. See Ballard v. Burton, 444 F.3d 391, 396-397 (5th Cir. 2006). Weems' guilty plea and sentence

has not been reversed on direct appeal, expunged, declared invalid or otherwise called into question through a habeas proceeding. Thus, Weems' Section 1983 action may be entertained only if the Court determines that a ruling in her favor will not necessarily call into question the validity of her conviction.

As part of her plea in state court, Weems admitted that there was sufficient evidence that could be used by the prosecution to obtain a guilty verdict. Since the evidence available to the prosecution was the information stated in the affidavit signed by Trooper Hartsfield to secure the arrest warrant, a ruling in favor of Weems would constitute an impermissible collateral attack on the state court conviction in this case. Therefore, because Weems' Section 1983 claims relate to her arrest based upon Trooper Hartsfield's affidavit for arrest and her state court conviction, the Defendant's Motion for Summary Judgment on the claims brought under Section 1983, and the related state constitutional claims, is **GRANTED**.

*2. Other State Law Claims*

The Plaintiff has also brought claims under Louisiana law for intentional infliction of emotional distress ("IIED") and defamation against Trooper Hartsfield.

To establish an IIED claim under Louisiana law, the Plaintiff must establish "(1) that the conduct of the defendatn was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

Here, the Plaintiff points to no evidence which shows that Trooper Hartsfield desired to inflict severe emotional distress, or that he was certain or substantially certain that such

13

distress would occur. In fact, Trooper Hartsfield even took the extra effort of allowing Weems to turn herself into the proper authorities by contacting her attorney to make necessary arrangements. Therefore, the Motion for Summary Judgment regarding this claim is **GRANTED**.

The second state law claim that Weems makes is for defamation of character. There are four elements to establish a defamation claim under Louisiana law: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." <u>Trentecosta v. Beck</u>, 96-2388 at 10, 703 So.2d at 559 (citing Restatement (Second) of Torts § 558 (1977)).

In this instance, Weems fails to identify any specific defamatory communication by Trooper Hartsfield. Therefore, Weems cannot satisfy her burden under this cause of action. Accordingly, the Motion for Summary Judgment regarding Plaintiff's defamation claim is **GRANTED**.

## CONCLUSION

For the reasons stated, Weems cannot establish a genuine issue of material fact regarding whether Trooper Hartsfield knowingly, or in reckless disregard for the truth, gave false information to secure an arrest warrant. Accordingly, he is entitled to qualified immunity. Further, a judgment in favor of Weems in this civil action would constitute to an impermissible collateral attack on the state court proceeding in which Weems pled guilty to the same underlying issues. Finally, Weems fails to establish any state law tortious conduct for defamation or intentional infliction of emotional distress by Trooper Hartsfield.

Therefore, the Motion for Summary Judgment filed by Trooper Hartsfield is hereby **GRANTED** in all respects.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 31st day of March, 2014.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE