**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| TANYA McLAIN WEEMS | CIVIL ACTION NO: 5:10-CV-1452 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JAMES DAVID HODNETT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Record Document 74] filed on behalf of Defendants, State of Louisiana Department of Insurance ("LDOI") and Ryan Curtis ("Curtis") (jointly referred to as "Defendants") under Federal Rule of Civil Procedure 56. For the reasons which follow, Defendants' Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Plaintiff Tanya Weems (hereafter referred to as "Plaintiff" or "Weems") began as a property and casualty service representative and producer agent for State Farm Insurance Company ("State Farm"). Weems later became licensed as a producer in 1996, and started working for Maynard, Clark and Teasley, Inc. ("MCT"), an insurance agency located in Shreveport, Louisiana in October 2003. During her employment at MCT, Weems worked as a licensed insurance producer, primarily handling automobile collision, liability and uninsured motorist coverage. James David Hodnett ("Hodnett") served as President, sole stockholder and owner of MCT throughout Weems' employment at the company.

In early January 2009, an outside investor approached Weems about establishing an insurance agency. Weems agreed to help, though she claims that she did not intend to leave her employment at MCT at that time. Hodnett found out about the venture shortly thereafter. On January 23, 2009, MCT terminated Weems' employment.

Following Weems' termination from MCT, Hodnett filed a complaint with the LDOI on March 4, 2009, alleging that Weems had engaged in a number of illegal activities during her employment with MCT. Based on this information, LDOI investigator, Ryan Curtis ("Curtis"), was assigned to investigate the allegations. Curtis reviewed the information provided by MCT at LDOI's Baton Rouge Office. He then interviewed MCT employees to learn more about MCT's procedures. Curtis thereafter visited MCT's office to review additional portions of MCT files as part of his investigation.

Upon completion of his investigation, Curtis prepared a privileged internal report which was reviewed by LDOI legal personnel. The report was then forwarded to the director of the legal section who studied the report and determined that there was evidence that serious misconduct had occurred. Subsequently, a staff attorney reviewed the contents of the report.

On August 14, 2009, the LDOI issued a Notice of Civil Fine and Revocation of Agent's Licence, fining Weems $9,674.00 and revoking her insurance license. The stated factual basis for the action was as follows:

> Beginning on or about November 11, 2008, for at least seven insurance policies that were either cancelled or pending cancellation, you caused seven separate payments to be made from MCT's bank account to insurance companies to have the policies reinstated or to prevent cancellation without collecting the corresponding premiums for the seven policies from the respective customers. The total amount you caused to be debited from MCT's bank account for the seven policies was $1,427.32.

> Also, on at least two different occasions, you caused MCT's bank account to be debited or drafted for payment to insurers of a customer's NSF fees and for the payment of a customer's overdraft fees all without collecting the corresponding fees from the customers. The amount of these payments totaled $382.28.

> Additionally, beginning on or about July 9, 2008, you wrote thirty different

insurance policies for individuals from whom you did not collect their respective initial premium payments. Nonetheless, as payment for the policies, you caused MCT's bank account to be debited or drafted by insurers that issued the policies. The amount of these payments totaled $6,489.84.

Further, for sixteen different insurance policies written by you during the course of your employment with MCT, you collected from customers only partial amounts of the required initial down payment for those policies. However, as payment for the policies, you caused MCT's bank account to be debited or drafted by the insurers that issued the policies the full amount of the required initial down payment. The difference between the total payments you caused MCT bank account to be debited or drafted by insurers and the amounts actually collected by you totaled $1,154.24.

Further, you received commissions of approximately $1,324.00 on the policies for which you failed to collect the initial payments or for which you collected only partial initial payments.[1]

Following the revocation, Weems filed a written demand for an administrative hearing to contest the regulatory actions taken by the LDOI. At the administrative hearing held on December 21, 2009, the Administrative Law Judge ("ALJ") lifted the immediate suspension of the license. The ALJ noted that the allegations against Weems involved MCT's loss of money, and there was no immediate risk of harm to the public. The ALJ further stated that a decision on the revocation and civil fine would follow within 30 days. On February 5, 2010, the ALJ found in favor of Weems regarding the collection of premiums. The Order stated that the evidence indicated a disagreement over internal business policy and practice, rather than fraud, misappropriation, theft, unfair or deceptive, or dishonest insurance practices. The decision further noted that MCT's record keeping and document production were not sufficient to support the revocation of Weems' insurance

---

[1] See Record Document 71, Exhibit Nos. 3 and 4.

license. Accordingly, the civil fine and insurance license revocation were reversed.[2]

During the same time period as the ongoing administrative process, the LDOI sent a copy of the report to the Louisiana State Police ("LSP") to review possible criminal actions, including insurance fraud, committed by Weems during the course of her employment at MCT.

Senior Trooper L. K. Hartsfield ("Trooper Hartsfield") is an investigator in the criminal division of the LSP, assigned to work in the insurance fraud unit. Hartsfield was assigned to investigate the case following a referral from the LDOI, through the insurance fraud task force.

Following the hearing by the ALJ, Curtis met with Trooper Hartsfield to parse the issues being handled by the administrative process and the remaining factual allegations to determine what, if any, crimes were committed by Weems, and whether there was probable cause to believe that crimes had been committed.[3] Trooper Hartsfield's investigation led him to believe that there was probable cause and he secured an arrest warrant. Weems was thereafter arrested pursuant to the arrest warrant issued by the First Judicial District Court, Caddo Parish, Louisiana.

On April 24, 2012, Weems entered a guilty plea for violation of La. Rev. Stat. Ann. § 22:1562(D)(1) for failing to account for a premium payment made to her based on the charges brought by the Louisiana Attorney General's Office in the First Judicial District

---

[2]See Record Document 71, Exhibit No. 7.

[3]At the time of this meeting, a written decision had not been rendered by the ALJ.

Court, Caddo Parish, Louisiana.[4] The plea by Weems was entered without admitting guilt, but due to the belief of Weems and her attorney that there was sufficient evidence for the conviction. The following discussion occurred during her sworn plea:

> THE COURT: All right. And, Mr. Sutherland, your client is entering a plea of
>
> guilty under Alfred [sic] versus North Carolina,[5] correct?
>
> MR. SUTHERLAND: That is correct, yes, sir.
>
> THE COURT: And while she is not admitting guilt, there is concern by you,
>
> Mr. Sutherland, and your client, that evidence could be such that there could
>
> be a conviction and in her best interest she's entering this plea, correct?
>
> MR. SUTHERLAND: That is absolutely correct, Judge.
>
> THE COURT: All Right. Ms. Weems, all that's correct?
>
> DEFENDANT: Yes, sir.

The First Judicial District Court, Caddo Parish, Louisiana accepted the guilty plea, finding that there was sufficient evidence to find Weems guilty of the crime committed.

## LAW AND ANALYSIS

**A. Legal Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] Quality Infusion Care, Inc. v. Health Care Serv.

---

[4]State of Louisiana v. Tanya Weems, Docket No. 295,596.

[5]North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970).

[6]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's

5

Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**B. Section 1983 Claims against LDOI and Curtis**

*1. 42 USC § 1983 Claim*

Plaintiff claims that her constitutional rights were violated by Defendants when she was subjected to state criminal proceedings following a decision by a ALJ. Defendants however claim that they are entitled to dismissal of these claims because neither LDOI nor Curtis deprived Plaintiff of her Constitutional rights through their actions following the ALJ hearing and decision.

*a. Internal Report provided to LSP*

Plaintiff claims that Curtis, and through the theory of respondeat superior LDOI, violated her constitutional rights when he reported the results of the LDOI investigation to

---

analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

the LSP because the ALJ previously held a hearing in which Weems' insurance license was reinstated. However, the Court finds that Curtis' / LDOI's actions were not a violation of Weems' constitutional rights.

LDOI has the responsibility to regulate all aspects of the insurance industry within the State of Louisiana. See La. Rev. Stat. Ann. § 22:1 et seq. To help with the regulation of the industry, a statutory scheme requires the LDOI to establish an insurance fraud section of the agency. The fraud section is explicitly required to investigate tips, and to report possible criminal activity found through their investigations to a proper law enforcement agency. Specifically, Section 22:1921, which mandates that the LDOI create a section on insurance fraud, reads in part:

> [If LDOI fraud section] has reason to believe, whether acting on its own initiative or as a result of complaints, that a person has engaged in, or is engaging in, an act or practice that violates this Part or any other provision of the Insurance Code, it may examine and investigate into the affairs of such person and may administer oaths and affirmations, serve subpoenas ordering the attendance of witnesses, and collect evidence.
>
> If during the course of investigation, the Department of Insurance determines that there **may** be a violation of any criminal law, the investigation **shall** then be turned over to the Louisiana Department of Justice, the Department of Public Safety and Corrections, public safety services, office of state police and other appropriate law enforcement and/or prosecutorial agency, for further investigation, enforcement, or prosecution.

La. Rev. Stat. Ann. § 22:1921 (emphasis added).

Clearly, the plain language of the Louisiana Insurance Code provides LDOI and its agents the authority to investigate possible violations of the Insurance Code. Further, it **mandates** that if "there may be a violation of any criminal law, the investigations **shall** then be turned over to the ... office of state police..." (emphasis added).

While Weems believes that any issue considered and rejected by the ALJ cannot

be relitigated in a criminal context, that is simply not the law. Under Louisiana state law, a decision or order by an ALJ is not considered a valid and final judgment for purposes of res judicata, and is not given res judicata effect. See Wooley v. State Farm Fire & Cas. Ins. Co., 893 So.2d 746, 771 (La. 2005). Further, an administrative court has no authority to determine whether a criminal violation occurred.

In this instance, LDOI and Curtis were statutorily required to turn over any potential criminal activity found through investigations made by the LDOI to a law enforcement agency, such as LSP, as they did here. Further, the Insurance Code provides that no person "acting without malice, fraudulent intent, or bad faith, shall be subject to civil liability for libel, slander, or any relevant tort, and no civil cause of action of any nature shall exist against any such person or entity by virtue of filing of reports or furnishing other information, either orally or in writing, concerning suspected, anticipated, or completed fraudulent insurance acts when such reports or information are provided to or received from the state Department of Insurance." La. Rev. Stat. Ann. § 22:1928(A). Weems fails to provide any evidence that Curtis or any other member of the LDOI acted with malice, fraudulent intent, or bad faith during the course of their investigation. Therefore, LDOI and Curtis were acting under the letter of the law and did not violate Weems' constitutional rights when they turned over their report to the LSP.

*b. Summary Suspension and Revocation of Weems' Insurance License*

Weems next claims that her license was unconstitutionally suspended or revoked by LDOI and Curtis. Defendants again state that they complied with the Louisiana statutory requirements, and their actions did not violate Weems' constitutional rights.

The Insurance Code provides the statutory authority for LDOI to revoke and/or

suspend an insurance agent's license, as well as the authority to levy a civil fine, when an agent fails to comply with one or more provisions of the Insurance Code. Particularly relevant to the instant litigation are the following acts which constitute violations of the Insurance Code:

> (4) Using fraudulent, coercive, or dishonest practices or misrepresentation, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business such as might endanger the public.
>
> (5) Misrepresenting the terms of an actual or proposed insurance contract, binder, rider, plan, or application for insurance, including all forms or documents that are attached, or will be attached, to an actual or proposed insurance contract, binder, rider, plan, or application for insurance.
> ...
> (10) Forging another's name to an application for insurance or to any document related to an insurance transaction.

La. Rev. Stat. Ann. § 22:1554(A)(4)-(5);(10).

Additionally, when LDOI becomes aware of a violation of any of the listed acts, it has the express authority to summarily suspend a license pending any proceeding or other action if it finds that public health, safety, or welfare requires action and LDOI incorporates that finding in its order. Here, LDOI investigated a complaint made against Weems by MCT. The investigation led LDOI to believe that Weems violated the Insurance Code and that her action might endanger the public. Accordingly, LDOI notified Weems and revoked her license pending the administrative proceeding. [See Record Document 74-7]. These actions were within LDOI's statutory authority. Therefore, the Defendants' Motion to Dismiss on this claim is **GRANTED**.

c. *False Arrest*[7]

---

[7]It is unclear from the Complaint if this cause of action was directed at LDOI and Curtis. Out of an abundance of caution, however, the Court makes the following findings

Weems next claims that she was deprived of constitutional rights because she was subjected to false arrest. The Defendants however are be entitled to Summary Judgment on this issue based on the Favorable Termination Rule established by the Supreme Court in Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) . Pursuant to Section 1983, Weems asserts claims for false arrest, malicious prosecution, civil conspiracy, and respondeat superior liability against all of the Defendants. However, these claims must be dismissed under Heck because Weems pled guilty to one of the charges brought against her in exchange for the other charges being dismissed.

Under Heck, a person who is convicted of a crime cannot recover for damages related to an alleged violation of his constitutional rights if the alleged violation arose from the same facts and circumstances of the conviction, unless he proves "his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1995)(citation omitted). This requirement or limitation has become known as the "favorable termination rule." Sappington, 195 F.3d at 235.

Section 1983 claims that effectively attack the constitutionality of an underlying

---

on this issue.

criminal conviction do not accrue until that conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. See Hudson v. Hughes, 98 F.3d 868, 872 (5th Cir.1996), citing Heck, 512 U.S. at 486–487, 114 S.Ct. at 2372. This legal principle serves to prevent Section 1983 plaintiffs from collaterally attacking convictions that are still outstanding. See Id., citing Heck, 512 U.S. at 486, 114 S.Ct. at 2371 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction ..., just as it has always applied to actions for malicious prosecution."). Based upon this rationale, "[t]he maturity of a [S]ection 1983 claim ... depends on 'whether a judgment in [the plaintiff's] favor ... would necessarily imply the invalidity of his conviction.'" Id., citing Heck, 512 U.S. at 487, 114 S.Ct. at 2372. Simply put, "the Heck determination depends on the nature of the offense and of the claim." Arnold v. Town of Slaughter, No. 03–30941, 2004 WL 1336637, *2 (5th Cir. June 14, 2004).

      Here, Weems pled guilty in state court to one of the charges brought against her in exchange for the other charges being dismissed. The criminal transcript shows that Weems and her attorney desired to make clear that she was not pleading guilty because she was guilty, but rather that they believed the evidence against her would result in a conviction, as permitted under Alford. This has no bearing on the current lawsuit because an Alford plea cannot be used to circumvent the favorable termination rule established in Heck. See Ballard v. Burton, 444 F.3d 391, 396-397 (5th Cir. 2006). Weems' guilty plea and sentence has not been reversed on direct appeal, expunged, declared invalid or otherwise called into

question through a habeas proceeding. Thus, Weems' Section 1983 action may be entertained only if the Court determines that a ruling in her favor will not necessarily call into question the validity of her conviction.

*2. Other State Law Claims*

The Plaintiff has also brought claims under Louisiana law for malicious prosecution, intentional infliction of emotional distress ("IIED") and defamation against all Defendants, including LDOI and Curtis.

*a. Malicious Prosecution*

To support a claim for malicious prosecution, the Plaintiff must establish six elements: (1) the commencement of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was the original defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause of the such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. See Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La. 7/10/06), 935 So.2d 669, n.20, citing Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So.2d 446 (La. 1987); Jones v. Soileau, 448 So.2d 1268, 1271 (La. 1984). Where a plaintiff cannot show that underlying proceedings terminated in her favor, the plaintiff cannot validly state a malicious prosecution claim. Anderson v. City of Minden, 2009 WL 13174122, *6 (W.D. La. 2009).

In the instant case, Weems cannot show that their was a bona fide termination of the original proceeding in her favor. In fact, Weems pled guilty to violating La. Rev. Stat. Ann. § 22:1562(D)(1) for failing to account for a premium payment made to her in state court. Further, Weems again admitted to the violation of the statute during her deposition

in the instant matter. Therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

*b. Intentional Infliction of Emotional Distress ("IIED")*

To establish an IIED claim under Louisiana law, the Plaintiff must establish "(1) that the conduct of the defendatn was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

Here, the Plaintiff points to no evidence which shows that Curtis or LDOI's conduct was extreme and outrageous. In defining "extreme and outrageous" conduct, the Louisiana Supreme Court state that the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991). Therefore, the Motion for Summary Judgment regarding this claim is **GRANTED**.

*c. Defamation*

The next state law claim that Weems makes is for defamation of character. There are four elements to establish a defamation claim under Louisiana law: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Trentecosta v. Beck, 96-2388 at 10, 703 So.2d at 559 (citing Restatement (Second) of Torts § 558 (1977)). If any of these elements is lacking, the Plaintiff's cause of action fails.

In this instance, Weems identifies fourteen articles which she believes are defamatory, including LDOI's August 14 Press Release as a defamatory communication.

Under Louisiana law, however, Curtis is entitled to qualified immunity for the issuance of the August 14 Press Release by LDOI.

The Louisiana Supreme Court in Trentecosta held that a qualified privilege could be asserted as a defense by law enforcement officials who provided statements to a newspaper concerning an investigation. See Trentecosta, 703 So.2d at 559. In its opinion, the Louisiana Supreme Court, citing the Restatement (Second) of Torts § 611, stated "[t]he publication of a defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported. Id. at 563. The Court further noted that the privilege extends to the media and any person who makes an oral, written, or printed report available to the general public. Id.

Here, the August 14 press release contained true facts concerning the Plaintiff, statements describing the results of LDOI's investigation and the allegations which led to the summary suspension. Accordingly, Curtis is entitled to a qualified privilege for the issuance of the press release.

Additionally, LDOI cannot be held liable for the other thirteen claimed defamatory statements because they were statements of third parties. Defamation, as a general rule, is an individual tort that fails to give rise to solidary liability. See Trentecosta, 703 So.2d at 558. The exceptions to this general rule include (1) when the statements made pursuant to a conspiracy to defame, in which case all persons connected in the conspiracy are solidarily liable, and (2) when an employee makes defamatory statements during the course and scope of their employment, "at least when the defamation was authorized or ratified by the employer. Id.

14

Here, Weems fails to provide any evidence of a conspiracy to defame her among the defendants. Therefore, Weems cannot satisfy her burden under this cause of action. Accordingly, the Motion for Summary Judgment regarding Plaintiff's defamation claim is **GRANTED**.

## CONCLUSION

For the reasons stated, Weems cannot establish a genuine issue of material fact regarding whether LDOI violated Weems' constitutional rights while following Louisiana statutory requirements. Further, a judgment in favor of Weems in this civil action would constitute to an impermissible collateral attack on the state court proceeding in which Weems pled guilty to the same underlying issues. Finally, Weems fails to establish any state law tortious conduct for malicious prosecution, intentional infliction of emotional distress, or defamation by LDOI or Curtis. Therefore, the Motion for Summary Judgment filed by LDOI and Curtis is hereby **GRANTED** in all respects.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 31st day of March, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE