UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TANYA McLAIN WEEMS                                CIVIL ACTION NO: 5:10-CV-1452

VERSUS                                                            JUDGE S. MAURICE HICKS, JR.

JAMES DAVID HODNETT, ET AL                MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Record Document 80] filed on behalf of Defendants John Elba Arnold, IV and Arnold Group, Inc. (Hereafter referred to as "Defendants") under Federal Rule of Civil Procedure 56. For the reasons which follow, the Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Plaintiff Tanya Weems (hereafter referred to as "Plaintiff" or "Weems") began as a property and casualty service representative and producer agent for State Farm Insurance Company ("State Farm"). Weems later became licensed as a producer in 1996, and started working for Maynard, Clark and Teasley, Inc. ("MCT"), an insurance agency located in Shreveport, Louisiana in October 2003. During her employment at MCT, Weems worked as a licensed insurance producer, primarily handling automobile collision, liability and uninsured motorist coverage. James David Hodnett ("Hodnett") served as President, sole stockholder and owner of MCT throughout Weems' employment at the company.

In early January 2009, an outside investor approached Weems about establishing an insurance agency. Weems agreed to help, though she claims that she did not intend to leave her employment at MCT at that time. Hodnett found out about the venture shortly thereafter. On January 23, 2009, MCT terminated Weems employment.

Following Weems' termination from MCT, James Hodnett, President of MCT, filed a complaint with the Louisiana Department of Insurance ("LDOI") on March 4, 2009, alleging that Weems had engaged in a number of illegal activities during her employment with MCT. Based on this information, LDOI investigator, Ryan Curtis ("Curtis"), was assigned to investigate the allegations.

From February, 2009 through the first week of June, 2009, Weems was employed by the Arnold Group, Inc. At some point prior to August 14, 2009, Arnold provided information to Curtis, although none of that information provided by Arnold was used by the LDOI in determining whether or not to suspend or revoke Weems' license.

On August 14, 2009, the LDOI issued a Notice of Civil Fine and Revocation of Agent's Licence, fining Weems $9,674.00 and revoking her insurance license. The stated factual basis for the action was as follows:

> Beginning on or about November 11, 2008, for at least seven insurance policies that were either cancelled or pending cancellation, you caused seven separate payments to be made from MCT's bank account to insurance companies to have the policies reinstated or to prevent cancellation without collecting the corresponding premiums for the seven policies from the respective customers. The total amount you caused to be debited from MCT's bank account for the seven policies was $1,427.32.
>
> Also, on at least two different occasions, you caused MCT's bank account to be debited or drafted for payment to insurers of a customer's NSF fees and for the payment of a customer's overdraft fees all without collecting the corresponding fees from the customers. The amount of these payments totaled $382.28.
>
> Additionally, beginning on or about July 9, 2008, you wrote thirty different insurance policies for individuals from whom you did not collect their respective initial premium payments. Nonetheless, as payment for the policies, you caused MCT's bank account to be debited or drafted by insurers that issued the policies. The amount of these payments totaled $6,489.84.
>
> Further, for sixteen different insurance policies written by you during the

course of your employment with MCT, you collected from customers only partial amounts of the required initial down payment for those policies. However, as payment for the policies, you caused MCT's bank account to be debited or drafted by the insurers that issued the policies the full amount of the required initial down payment. The difference between the total payments you caused MCT bank account to be debited or drafted by insurers and the amounts actually collected by you totaled $1,154.24.

Further, you received commissions of approximately $1,324.00 on the policies for which you failed to collect the initial payments or for which you collected only partial initial payments.[1]

Following the revocation, Weems filed a written demand for an administrative hearing to contest the regulatory actions taken by the LDOI. At the administrative hearing held on December 21, 2009, the Administrative Law Judge ("ALJ") lifted the immediate suspension of the license. The ALJ noted that the allegations against Weems involved MCT's loss of money, and there was no immediate risk of harm to the public. The ALJ further stated that a decision on the revocation and civil fine would follow within 30 days. On February 5, 2010, the ALJ found in favor of Weems regarding the collection of premiums. The Order stated that the evidence indicated a disagreement over internal business policy and practice, rather than fraud, misappropriation, theft, unfair or deceptive, or dishonest insurance practices. The decision further noted that MCT's record keeping and document production were not sufficient to support the revocation of Weems' insurance license. Accordingly, the civil fine and insurance license revocation were reversed.[2]

During the same time period as the ongoing administrative process, the LDOI referred the case to the Louisiana State Police ("LSP") to review possible criminal actions,

---

[1] See Record Document 71, Exhibit Nos. 3 and 4.

[2] See Record Document 71, Exhibit No. 7.

including insurance fraud, committed by Weems during the course of her employment at MCT. In addition to the allegations of theft and misappropriation of MCT funds, Weems was also being investigated for "forged insurance documents, [and] falsified information on insurance documents..."[3]

Senior Trooper L. K. Hartsfield (hereafter referred to as "Defendant" or "Hartsfield") is an investigator in the criminal division of the LSP, assigned to work in the insurance fraud unit. Hartsfield was assigned to investigate a case following a referral from the LDOI, through the insurance fraud task force. LDOI referred the case to LSP because of possible criminal behavior by Weems. Principals of MCT reported to the LDOI that Weems may have violated the law during the course of her employment with the company.

Following the hearing by the ALJ, LDOI investigator, Ryan Curtis, met with LSP Trooper Hartsfield to parse the issues being handled by the administrative process and the remaining factual allegations to determine what, if any, crimes were committed by Weems, and whether there was probable cause to believe that crimes had been committed.[4]

Hartsfield reviewed LDOI documentation of Weems' actions following the establishment of her own insurance agency. The investigation discovered the following serious violations:

> (1) Unlicensed agent – On June 15, 2009, undercover LDOI investigators discovered an unlicensed agent writing policies at the Weems agency, and issuing insurance policies through USAgencies by entering false information

---

[3] See Record Document 71, Exhibit No. 2.

[4] At the time of this meeting, a written decision had not been rendered by the ALJ.

4

onto the application without verification.

(2) Angela Strong – On June 15, 2009, Weems accepted payment of $464.00 from Angela Strong for issuance of a new policy of insurance, but did not tender payment on Strong's behalf to the insurer.

(3) Joy Abraham – On June 26, 2009, Joy Abraham paid $603.00 to Weems for the renewal of a policy with Kemper Insurance, previously issued through MCT. Weems instead had USAgencies issue a new policy to Abraham without her consent for less money, keeping the premium difference herself.

(4) Aretha Hughes – On August 7, 2009, Aretha Hughes gave Weems $289.96 to initiate a new auto insurance policy. Weems issued Hughes an insurance identification card, but the insurer never received payment of the premium.

(5) Brian Jackson[5] – On August 11, 2009, Brian Jackson gave Weems $70.12 to initiate new auto coverage. Weems issued proof of insurance cards to Jackson. The insurer, USAgencies, never received payment nor issued a policy.

(6) Catherine Coffelt – On November 6, 2009, Coffelt learned that Weems had placed her name on another person's proof of insurance card, taking a payment of $130.00 and never secured the auto insurance;

(7) Alberta Brooks – On February 1, 2010, Weems called Brooks to obtain

---

[5]Weems eventually made a plea bargain where she pled guilty to the charges related to Brian Jackson in exchange for a sentence recommendation and dismissal of the other counts.

$158.89 for an increased premium on her insurance policy, which was sent to her. When Brooks went to Weems' former agency to sign paperwork, she learned that there had been no increase in premiums at all.

The facts of these incidents were not reviewed during the administrative court proceeding. Trooper Hartsfield prepared an affidavit for an arrest warrant and submitted it for review by Sgt. Michael Wilkerson on March 18, 2010, who approved the affidavit, then forwarded it to the Caddo Parish District Attorney's Office. The District Attorney's office requested some additions to the warrant via an email sent on March 26, 2010. The arrest warrant was submitted to, and signed by, the Honorable Ramona Emanuel, District Judge, First Judicial District Court, Caddo Parish, Louisiana on March 29, 2010. Later that day, Trooper Hartsfield contacted Weems' attorney, Fred Sutherland to arrange a voluntary surrender. Weems voluntarily surrendered at the Caddo Correctional Center on March 31, 2010. There was some confusion about Weems' bond, so Sutherland contacted Hartsfield. Hartsfield told Sutherland that issues with the bond were handled by the District Attorney and the Court.

A few months later, the District Attorney decided not to pursue charges, but later reconsidered that decision and referred the matter to the Louisiana Attorney General to consider prosecution.

Weems filed a civil lawsuit in state court on August 13, 2010 claiming that Trooper Hartsfield caused her "false arrest and imprisonment" on the basis of an affidavit with "virtually the same" counts as were considered by the ALJ. The suit was removed to federal court on September 20, 2010.

On April 24, 2012, Weems plead guity to the count related to the Brian Jackson

matter in the First Judicial District Court, Caddo Parish, Louisiana. The plea by Weems was entered without admitting guilt, but due to Weems and her attorney believing there was sufficient evidence for the conviction. The following discussion occurred during her sworn plea:

THE COURT: All right. And, Mr. Sutherland, your client is entering a plea of guilty under Alfred [sic] versus North Carolina,[6] correct?

    MR. SUTHERLAND: That is correct, yes, sir.

    THE COURT: And while she is not admitting guilt, there is concern by you, Mr. Sutherland, and your client, that evidence could be such that there could be a conviction and in her best interest she's entering this plea, correct?

    MR. SUTHERLAND: That is absolutely correct, Judge.

    THE COURT: All Right. Ms. Weems, all that's correct?

    DEFENDANT: Yes, sir.

The First Judicial District Court, Caddo Parish, Louisiana accepted the guilty plea, finding that there was sufficient evidence to find Weems guilty of the crime committed.

## LAW AND ANALYSIS

### A. Legal Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] Quality Infusion Care, Inc. v. Health Care Serv.

---

[6] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970).

[7] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P.

7

Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**B. Analysis of Claims**

*1. Defamation*

Plaintiff's first claim against these defendants is for defamation of character. There are four elements to establish a defamation claim under Louisiana law: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Trentecosta v. Beck, 96-2388 at 10, 703 So.2d at 559 (citing Restatement (Second) of Torts § 558 (1977)). Additionally, a cause of action for defamation must be pled with particularity. Specifically, the plaintiff must identify the alleged defamatory statement, who made the statement, the date of the statement or publication, and to whom the statement

---

56(a) and advisory committee's note (emphasis added).

8

was made or published. See Scott v. Houma-Terrebonne Housing Authority, 2002 U.S. Dist. LEXIS 16719 (E.D. La. 2002). If any of these elements is lacking, the Plaintiff's cause of action fails. Weems directs the Court to two actions by Arnold for defamation: (1) reporting information to the Louisiana Department of Insurance through Curtis, and the insurance fraud task force through Trooper Hartsfield.

*a. Report to the Louisiana Department of Insurance*

Weems first directs the Court to Arnold's statements to the LDOI. Louisiana law requires that individuals engaged in the insurance business report fraud to the Department of Insurance Fraud Division. Specifically, La. R.S. 40:1424 states, "If any person or any insurer, any employee thereof, or any insurance professional has knowledge of or has reason to believe that a violation of R.S. 22:1242, 1243, or 1244 will be, is being, or has been committed, that person **shall** notify the section of insurance fraud in the Department of Insurance, in accordance with R.S. 22:1926." (Emphasis added). Because of the reporting requirement, the Insurance Code also provides immunity to those who report possible wrongdoings of others as long as there is no evidence of malice by the insurance professional. See La. R.S. 22:1928.

In the instant case, Weems fails to show that Arnold had any malice toward her when he made his report to the LDOI and LSP. Trooper Hartsfield's statement during his deposition that he had no reason to believe that Arnold was being untruthful or that Arnold had a personal grudge against Weems. [See Record Document 80-5]. Therefore, Arnold is entitled to immunity for his comments to the LDOI and LSP.

*b. Publications to Public*

Weems also alleges that Arnold defamed her by contacting, and making statements

to, employers and/or perspective employers, and by making through articles on the internet. However, Weems claims regarding statements that Arnold may have made were not pled with specific particularity in her Complaint. Weems fails to point out any particular instance where Arnold may have defamed her. Weems does, however, point out fourteen specific articles (press releases, newspapers, and internet articles) relating to the Department of Insurance proceedings against her, but she fails to show that any of the articles were written by Arnold and someone associated with Arnold Group, Inc. Therefore, the Motion for Summary Judgment is **GRANTED**.

*2. Intentional Interference with a Contractual Relationship*

Next, Weems alleges that the Defendants "engaged in an effort to interfere with and adversely affect any business relationship Ms. Weems was able to engender." To establish a cause of action for intentional interference with a contractual relationship, the Plaintiff must establish four elements: (1) the existence of a contract or legally protected interest between a plaintiff and third party; (2) the defendant's knowledge of a contract; (3) intentional inducement or causation to breach or intentionally make performance more burdensome or impossible; and (4) damages incurred by the beach. 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228, 234 (La. 1989).

Here, Weems failed to allege the existence of any contract with a third party. Therefore, the allegation is a conclusory statement and fails to meet the pleading requirements established under Twombly.[8] Therefore, Defendants' Motion for Summary

---

[8]In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court held that a complaint must allege facts with sufficient specificity to state a claim for relief that is plausible on its face.

Judgment on this issue is **GRANTED**.

*3. Malicious Prosecution*

To support a claim for malicious prosecution, the Plaintiff must establish six elements: (1) the commencement of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was the original defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause of the such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. See Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La. 7/10/06), 935 So.2d 669, n.20, citing Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So.2d 446 (La. 1987); Jones v. Soileau, 448 So.2d 1268, 1271 (La. 1984). Where a plaintiff cannot show that underlying proceedings terminated in her favor, the plaintiff cannot validly state a malicious prosecution claim. Anderson v. City of Minden, 2009 WL 13174122, *6 (W.D. La. 2009).

In the instant case, Weems cannot show that their was a bona fide termination of the original proceeding in her favor. In fact, Weems pled guilty to violating La. Rev. Stat. Ann. § 22:1562(D)(1) for failing to account for a premium payment made to her in state court. Further, Weems again admitted to the violation of the statute during her deposition in the instant matter. Therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

*4. Intentional Infliction of Emotional Distress ("IIED")*

To establish an IIED claim under Louisiana law, the Plaintiff must establish "(1) that the conduct of the defendatn was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially

11

likely to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

Here, the Plaintiff points to no evidence which shows that Arnold or Arnold Group, Inc.'s conduct was extreme and outrageous. In defining "extreme and outrageous" conduct, the Louisiana Supreme Court state that the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991). In this instance, Arnold simply followed his statutory requirement as an insurance professional to report suspicious conduct to LDOI. Therefore, the Motion for Summary Judgment regarding this claim is **GRANTED**.

## CONCLUSION

For the reasons stated, Weems fails to establish any state law tortious conduct for defamation, malicious prosecution, intentional interference in a contractual relationship, malicious prosecution, or intentional infliction of emotional distress by the Arnold Defendants. Therefore, the Motion for Summary Judgment filed by Arnold and Arnold Group, Inc. is hereby **GRANTED** in all respects.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 31st day of March, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE