UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TANYA McLAIN WEEMS                      CIVIL ACTION NO: 5:10-CV-1452

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

JAMES DAVID HODNETT, ET AL.             MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Record Document 83] filed on behalf of Defendants, James David Hodnett ("Hodnett") and his insurance company, Maynard, Clark and Teasley, Inc. ("MCT") (hereafter jointly referred to as "Defendants") under Federal Rule of Civil Procedure 56. For the reasons which follow, Defendants' Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

Plaintiff Tanya Weems (hereafter referred to as "Plaintiff" or "Weems") began as a property and casualty service representative and producer agent for State Farm Insurance Company ("State Farm"). Weems later became licensed as a producer in 1996, and started working for MCT, an insurance agency located in Shreveport, Louisiana in October 2003. During her employment at MCT, Weems worked as a licensed insurance producer, primarily handling automobile collision, liability and uninsured motorist coverage. Hodnett served as President, sole stockholder and owner of MCT throughout Weems' employment at the company.

In early January 2009, an outside investor approached Weems about establishing an insurance agency. Weems agreed to help, though she claims that she did not intend to leave her employment at MCT at that time. Hodnett found out about the venture shortly

thereafter. On January 23, 2009, MCT terminated Weems' employment.

Following Weems' termination from MCT, Hodnett filed a complaint with the LDOI on March 4, 2009, alleging that Weems had engaged in a number of illegal activities during her employment with MCT. Based on this information, LDOI investigator, Ryan Curtis ("Curtis"), was assigned to investigate the allegations. Curtis reviewed the information provided by MCT at LDOI's Baton Rouge Office. He then interviewed MCT employees to learn more about MCT's procedures. Curtis thereafter visited MCT's office to review additional portions of MCT files as part of his investigation.

Upon completion of his investigation, Curtis prepared a privileged internal report which was reviewed by LDOI legal personnel. The report was then forwarded to the director of the legal section who studied the report and determined that there was evidence that serious misconduct had occurred. Subsequently, a staff attorney reviewed the contents of the report.

On August 14, 2009, the LDOI issued a Notice of Civil Fine and Revocation of Agent's Licence, fining Weems $9,674.00 and revoking her insurance license. The stated factual basis for the action was as follows:

> Beginning on or about November 11, 2008, for at least seven insurance policies that were either cancelled or pending cancellation, you caused seven separate payments to be made from MCT's bank account to insurance companies to have the policies reinstated or to prevent cancellation without collecting the corresponding premiums for the seven policies from the respective customers. The total amount you caused to be debited from MCT's bank account for the seven policies was $1,427.32.
>
> Also, on at least two different occasions, you caused MCT's bank account to be debited or drafted for payment to insurers of a customer's NSF fees and for the payment of a customer's overdraft fees all without collecting the corresponding fees from the customers. The amount of these payments totaled $382.28.

>Additionally, beginning on or about July 9, 2008, you wrote thirty different insurance policies for individuals from whom you did not collect their respective initial premium payments. Nonetheless, as payment for the policies, you caused MCT's bank account to be debited or drafted by insurers that issued the policies. The amount of these payments totaled $6,489.84.
>
>Further, for sixteen different insurance policies written by you during the course of your employment with MCT, you collected from customers only partial amounts of the required initial down payment for those policies. However, as payment for the policies, you caused MCT's bank account to be debited or drafted by the insurers that issued the policies the full amount of the required initial down payment. The difference between the total payments you caused MCT bank account to be debited or drafted by insurers and the amounts actually collected by you totaled $1,154.24.
>
>Further, you received commissions of approximately $1,324.00 on the policies for which you failed to collect the initial payments or for which you collected only partial initial payments.[1]

Following the revocation, Weems filed a written demand for an administrative hearing to contest the regulatory actions taken by the LDOI. At the administrative hearing held on December 21, 2009, the Administrative Law Judge ("ALJ") lifted the immediate suspension of the license. The ALJ noted that the allegations against Weems involved MCT's loss of money, and there was no immediate risk of harm to the public. The ALJ further stated that a decision on the revocation and civil fine would follow within 30 days. On February 5, 2010, the ALJ found in favor of Weems regarding the collection of premiums. The Order stated that the evidence indicated a disagreement over internal business policy and practice, rather than fraud, misappropriation, theft, unfair or deceptive, or dishonest insurance practices. The decision further noted that MCT's record keeping and document production were not sufficient to support the revocation of Weems' insurance

---

[1]See Record Document 71, Exhibit Nos. 3 and 4.

license. Accordingly, the civil fine and insurance license revocation were reversed.[2]

During the same time period as the ongoing administrative process, the LDOI sent a copy of the report to the Louisiana State Police ("LSP") to review possible criminal actions, including insurance fraud, committed by Weems during the course of her employment at MCT.

Senior Trooper L. K. Hartsfield ("Trooper Hartsfield") is an investigator in the criminal division of the LSP, assigned to work in the insurance fraud unit. Hartsfield was assigned to investigate the case following a referral from the LDOI, through the insurance fraud task force.

Following the hearing by the ALJ, Curtis met with Trooper Hartsfield to parse the issues being handled by the administrative process and the remaining factual allegations to determine what, if any, crimes were committed by Weems, and whether there was probable cause to believe that crimes had been committed.[3] Trooper Hartsfield's investigation led him to believe that there was probable cause and he secured an arrest warrant. Weems was thereafter arrested pursuant to the arrest warrant issued by the First Judicial District Court, Caddo Parish, Louisiana.

On April 24, 2012, Weems entered a guilty plea for violation of La. Rev. Stat. Ann. § 22:1562(D)(1) for failing to account for a premium payment made to her based on the charges brought by the Louisiana Attorney General's Office in the First Judicial District

---

[2]See Record Document 71, Exhibit No. 7.

[3]At the time of this meeting, a written decision had not been rendered by the ALJ.

4

Court, Caddo Parish, Louisiana.[4] The plea by Weems was entered without admitting guilt, but due to the belief of Weems and her attorney that there was sufficient evidence for the conviction. The following discussion occurred during her sworn plea:

> THE COURT: All right. And, Mr. Sutherland, your client is entering a plea of guilty under Alfred [sic] versus North Carolina,[5] correct?
>
> MR. SUTHERLAND: That is correct, yes, sir.
>
> THE COURT: And while she is not admitting guilt, there is concern by you, Mr. Sutherland, and your client, that evidence could be such that there could be a conviction and in her best interest she's entering this plea, correct?
>
> MR. SUTHERLAND: That is absolutely correct, Judge.
>
> THE COURT: All Right. Ms. Weems, all that's correct?
>
> DEFENDANT: Yes, sir.

The First Judicial District Court, Caddo Parish, Louisiana accepted the guilty plea, finding that there was sufficient evidence to find Weems guilty of the crime committed.

## LAW AND ANALYSIS

**A. Legal Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] Quality Infusion Care, Inc. v. Health Care Serv.

---

[4]State of Louisiana v. Tanya Weems, Docket No. 295,596.

[5]North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970).

[6]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's

Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**B. Legal Analysis**

*1. Defamation*

Weems first asserts a defamation of character claim against the Defendants.  There are four elements to establish a defamation claim under Louisiana law: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Trentecosta v. Beck, 96-2388 at 10, 703 So.2d at 559 (citing Restatement (Second) of Torts § 558 (1977)). If any of these elements is lacking, the Plaintiff's cause of action fails.

In this instance, Weems asserts two communications made by Hodnett were defamatory, a letter written on March 4, 2009 and again on April 9, 2009 (the

---

analysis.  F.R.C.P. 56(a) and advisory committee's note (emphasis added).

correspondence was identical). The letters to the LDOI are subject to a statutory privilege, however.

Louisiana law requires that individuals engaged in the insurance business report fraud to the Department of Insurance Fraud Division. Specifically, La. R.S. 40:1424 states, "If any person or any insurer, any employee thereof, or any insurance professional has knowledge of or has reason to believe that a violation of R.S. 22:1242, 1243, or 1244 will be, is being, or has been committed, that person **shall** notify the section of insurance fraud in the Department of Insurance, in accordance with R.S. 22:1926." (Emphasis added). Because of the reporting requirement, the Insurance Code also provides immunity to those who report possible wrongdoings of others as long as there is no evidence of malice by the insurance professional. See La. R.S. 22:1928.

In the instant case, Weems fails to show that Hodnett had any malice toward her when he made his report to the LDOI. Therefore, Hodnett is entitled to immunity for his correspondence with LDOI. Accordingly, Defendants' Motion to Dismiss on this issue is **GRANTED**.

*2. Malicious Prosecution*

To support a claim for malicious prosecution, the Plaintiff must establish six elements: (1) the commencement of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was the original defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause of the such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. See Kennedy v. Sheriff

of East Baton Rouge, 2005-1418 (La. 7/10/06), 935 So.2d 669, n.20, citing Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So.2d 446 (La. 1987); Jones v. Soileau, 448 So.2d 1268, 1271 (La. 1984). Where a plaintiff cannot show that underlying proceedings terminated in her favor, the plaintiff cannot validly state a malicious prosecution claim. Anderson v. City of Minden, 2009 WL 13174122, *6 (W.D. La. 2009).

In the instant case, Weems cannot show that their was a bona fide termination of the original proceeding in her favor. In fact, Weems pled guilty to violating La. Rev. Stat. Ann. § 22:1562(D)(1) for failing to account for a premium payment made to her in state court. Further, Weems again admitted to the violation of the statute during her deposition in the instant matter. Therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

*3. Wrongful arrest[7]*

Weems next claims that she was deprived of constitutional rights because she was subjected to false arrest. The Defendants however are be entitled to Summary Judgment on this issue based on the Favorable Termination Rule established by the Supreme Court in Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) . Pursuant to Section 1983, Weems asserts claims for false arrest, malicious prosecution, civil conspiracy, and respondeat superior liability against all of the Defendants. However, these claims must be dismissed under Heck because Weems pled guilty to one of the charges brought against her in exchange for the other charges being dismissed.

Under Heck, a person who is convicted of a crime cannot recover for damages related to an alleged violation of his constitutional rights if the alleged violation arose from

---

[7]The Court concludes from Plaintiff's less-than clear complaint that she is asserting a claim for wrongful arrest.

8

the same facts and circumstances of the conviction, unless he proves "his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1995)(citation omitted). This requirement or limitation has become known as the "favorable termination rule." Sappington, 195 F.3d at 235.

Section 1983 claims that effectively attack the constitutionality of an underlying criminal conviction do not accrue until that conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. See Hudson v. Hughes, 98 F.3d 868, 872 (5th Cir.1996), citing Heck, 512 U.S. at 486–487, 114 S.Ct. at 2372. This legal principle serves to prevent Section 1983 plaintiffs from collaterally attacking convictions that are still outstanding. See Id., citing Heck, 512 U.S. at 486, 114 S.Ct. at 2371 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction ..., just as it has always applied to actions for malicious prosecution."). Based upon this rationale, "[t]he maturity of a [S]ection 1983 claim ... depends on 'whether a judgment in [the plaintiff's] favor ... would necessarily imply the invalidity of his

9

conviction.'" Id., citing Heck, 512 U.S. at 487, 114 S.Ct. at 2372. Simply put, "the Heck determination depends on the nature of the offense and of the claim." Arnold v. Town of Slaughter, No. 03–30941, 2004 WL 1336637, *2 (5th Cir. June 14, 2004).

Here, Weems pled guilty in state court to one of the charges brought against her in exchange for the other charges being dismissed. The criminal transcript shows that Weems and her attorney desired to make clear that she was not pleading guilty because she was guilty, but rather that they believed the evidence against her would result in a conviction, as permitted under Alford. This has no bearing on the current lawsuit because an Alford plea cannot be used to circumvent the favorable termination rule established in Heck. See Ballard v. Burton, 444 F.3d 391, 396-397 (5th Cir. 2006). Weems' guilty plea and sentence has not been reversed on direct appeal, expunged, declared invalid or otherwise called into question through a habeas proceeding. Thus, Weems' Section 1983 action may be entertained only if the Court determines that a ruling in her favor will not necessarily call into question the validity of her conviction.

*4. Intentional Infliction of Emotional Distress ("IIED")*

To establish an IIED claim under Louisiana law, the Plaintiff must establish "(1) that the conduct of the defendatn was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

Here, the Plaintiff points to no evidence which shows that Defendants' conduct was extreme and outrageous. In defining "extreme and outrageous" conduct, the Louisiana Supreme Court state that the "conduct must be so outrageous in character, and so extreme

in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991). Weems simply points to Defendants' correspondence with LDOI, which fails to rise to the pleading standard required for a IIED claim. Therefore, the Motion for Summary Judgment regarding this claim is **GRANTED**.

## CONCLUSION

For the reasons stated, Weems fails to establish any claim for defamation, malicious prosecution, wrongful arrest or intentional infliction of emotional distress by these Defendants. Therefore, the Motion for Summary Judgment filed by Hodnet and MCT is hereby **GRANTED** in all respects.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 31st day of March, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

11